UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT EISNER,<br><br>         Plaintiff,<br><br>    v.<br><br>META PLAFORMS, INC. and MARK ZUCKERBERG,<br><br>         Defendants. | Case No. 24-cv-2175-CRB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

       Matt Eisner ("Plaintiff") moves for a preliminary injunction against Meta Platforms, Inc. ("Meta") and Mark Zuckerberg ("Zuckerberg") (collectively, the "Defendants") based on Meta's allegedly false or misleading statements in its 2024 Proxy Statement (the "Proxy Statement"). Mot. (dkt. 9) at 1. Plaintiff seeks a preliminary injunction requiring Meta to (1) make additional disclosures in its Proxy Statement regarding its efforts to safeguard children on its platforms, and (2) postpone its annual shareholder meeting on May 29, 2024 to allow sufficient time for Meta to make the disclosures and for shareholders to review them in advance of the meeting. Id. Finding this matter suitable for disposition without oral argument under Civil Local Rule 7-1(b), the Court hereby VACATES the hearing scheduled for October 11, 2024. For the reasons explained below, the Court DENIES Plaintiff's motion for a preliminary injunction.[1]

### I.    BACKGROUND

       Plaintiff is a current shareholder of Meta Platforms, Inc., a publicly traded company. Id. Meta owns the popular social media platforms Facebook and Instagram. Id.

---

[1] Plaintiff's request to postpone Meta's annual shareholder meeting is moot because the meeting went forward as scheduled. However, the Court addresses why an injunction was not warranted on the merits prior to the meeting.

at 1.  Earlier this year, Meta filed its Proxy Statement with the Securities Exchange Commission to provide certain information to its shareholders in advance of its annual shareholder meeting scheduled for May 29, 2024.  Opp'n (dkt. 31) at 2.  The Proxy Statement contained two shareholder proposals related to the issue of child exploitation on Meta's platforms:

- Proposal 11 requested that Meta's Board of Directors (the "Board") adopt child safety or harm reduction performance targets and publish an annual report to assess whether Meta has improved its safeguarding of children on its platforms.  Id.
- Proposal 12 requested that the Board commission a third-party report to assess the risks and benefits of enacting a higher minimum user age on Meta's platforms.  Id.  The Proposal also sought an advisory shareholder vote on whether to institute such a higher minimum user age.  Id.

Both proposals were advisory but not binding on Meta because they only "request[ed]" that Meta take the proposed actions.  Id.  The Board recommended that shareholders vote against the two proposals, urging that Meta's existing policies coupled with new efforts to prevent child exploitation are sufficient to confront the issue.  See Mot. at 5–6.

Plaintiff alleges that the Proxy Statement included "materially false and misleading" statements "because it ma[de] misrepresentations and omissions regarding the extent to which Meta is taking adequate steps to protect children on its social media platforms and the risks to Meta from failing to do so."  Id. at 4.  To support this claim, Plaintiff points to a litany of statements made in the body of the Proxy Statement and statements made by Meta in opposition to shareholder Proposals 11 and 12.  For example, Plaintiff disputes Meta's statement that "[its] policies prohibit harmful content, as well as content or behavior that exploits young people."  Id. at 5.  Plaintiff also challenges Meta's statement that it "seek[s] to prevent child exploitation through a number of measures, including using sophisticated technology."  Id. at 6.  Plaintiff similarly disagrees with other representations made by Meta along the same lines.  See Compl. at 2 ("Preventing child exploitation is one

United States District Court
Northern District of California

1  of the most important challenges facing our industry today."); ("We are constantly
2  working on new features, tools, and technologies to help protect young people online . . .
3  In August 2023 alone, we disabled more than 500,000 accounts for violating our sexual
4  exploitation policies.").

5  To demonstrate the alleged falsity of the statements, Plaintiff points to Meta's
6  internal Community Standards Enforcement Report, which purportedly shows that
7  "content that sexually exploits children has proliferated at an astounding rate on Facebook
8  and Instagram." Mot. at 11. Plaintiff also raises articles by The Wall Street Journal and
9  The New York Times, which chronicle alleged problems on Meta's platforms that place
10 children at risk of exploitation. See Compl. at 28; Mot. at 9–12. Plaintiff's core allegation
11 is that Meta's Proxy Statement "fail[ed] to disclose the full extent of [its child exploitation]
12 problem and the failure of Meta's internal controls and enforcement mechanisms to curtail
13 it." Mot. at 12. Defendants deny that the Proxy Statement makes any such false or
14 misleading statements by affirmative representation or by omission.

15 Plaintiff brings a claim under Section 14(a) of the Securities Exchange Act of 1934
16 ("Exchange Act") based on the Proxy Statement's allegedly false and misleading
17 statements. Compl. at 41. On April 19, 2024, Plaintiff filed the present motion seeking a
18 preliminary injunction to (1) require Meta to make additional disclosures in the Proxy
19 Statement, and (2) postpone Meta's May 29, 2024 annual shareholder meeting to allow
20 time for the Board to make additional disclosures and for shareholders to review them.
21 Mot. at 1.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary injunctions. To obtain a preliminary injunction pursuant to Rule 65(a), a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555

U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" Id. at 24 (internal citations omitted). The Ninth Circuit has adopted a sliding scale approach to preliminary injunctions in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

### III. DISCUSSION

The Court addresses the Winter factors in the following order: (A) likelihood of success on the merits; (B) irreparable harm; (C) balance of the equities; and (D) public interest. The Court concludes that a preliminary injunction is not warranted for postponing the shareholder meeting or for requiring additional statements in the Proxy Statement because all four Winter factors weigh against Plaintiff.

#### A. Success on the Merits

Section 14(a) of the Exchange Act prohibits proxy statements that are "false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9. To state a claim under Section 14(a), a plaintiff must establish that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." New York City Employees' Ret. Sys. v. Jobs, 593 F.3d 1018, 1022 (9th Cir. 2010); see also Desaigoudar v. Meyercord, 223 F.3d 1020, 1022 (9th Cir. 2000). A misleading or omitted fact "is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 439 (1976).

"In addition, private plaintiffs must meet the heightened pleading standards of the [Private Securities Litigation Reform Act of 1995 ("PSLRA")], as well as its loss causation requirement." New York City Employees' Ret. Sys., 593 F.3d at 1022. The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.A. § 78u-4. Plaintiffs also bear "the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." Id. "To show loss causation, a plaintiff must prove both economic loss and proximate causation. In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." New York City Employees' Ret. Sys., 593 F.3d at 1023 (internal citations omitted).

As discussed below, Plaintiff is not likely to succeed on the merits of his Section 14(a) claim because he fails to allege that the Proxy Statement contained any material misrepresentations or omissions. The statements raised by Plaintiff fall into two categories: (1) broad affirmations of policy and aspirational statements, and (2) objective statements that may be disproven. The first category is consistently held to be non-actionable under the Exchange Act. As to the second category, Plaintiff fails to prove with particularity that the statements are either material misrepresentations or that Meta made any material omissions. Plaintiff is also independently unlikely to succeed on the merits because he fails to satisfy the loss causation requirement under PSLRA.

### 1. Material Misrepresentations or Omissions

#### a. Policy Statements

The first set of statements that Plaintiff alleges are false or misleading are broad policy affirmations or aspirational statements. For instance, Plaintiff raises Meta's statement that its "policies prohibit harmful content, as well as content or behavior that exploits young people," and that Meta "seek[s] to prevent child exploitation through a number of measures, including using sophisticated technology." Compl. at 2. Plaintiff

5

also challenges Meta's assertion that "[p]reventing child exploitation is one of the most important challenges facing our industry today," and that the company is "constantly working on new features, tools, and technologies to help protect young people online." Id.

Courts consistently hold that such aspirational statements, like those raised by Plaintiff, are not actionable under the Exchange Act. See, e.g., Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1276 (9th Cir. 2017) (holding that a code of conduct is inherently aspirational and does not "imply[] that all staff, directors, and officers always adhere to its aspirations"); Barnes v. Edison Int'l, No. 21-55589, 2022 WL 822191, at *1 (9th Cir. Mar. 18, 2022) (affirming district court's holding that "references to the focus or commitment . . . on safety, infrastructure investment, or mitigation of wildfire risks" were not actionable as misleading statements); Nathanson v. Polycom, Inc., 87 F. Supp. 3d 966, 976–77 (N.D. Cal. 2015) (holding that commitment to ethical practices are "inherently aspirational and hence immaterial"); Ocegueda ex rel. Facebook v. Zuckerberg, 526 F. Supp. 3d 637, 651 (N.D. Cal. 2021) (holding that Facebook's statements about its commitment to diversity were "non-actionable puffery or aspirational"). So too here are many of Defendants' statements in the first set not actionable because they are broad affirmations of Meta's policies, aspirational statements, or references to its commitment to safety. Like the statements in the cases above, these statements are broad policy statements and nothing more. For these statements, Plaintiff therefore fails to show likelihood of success on the merits under Section 14(a).

Even if these statements were actionable as securities violations—which they are not—Plaintiff has not alleged particularized facts to show that they are materially false or misleading. Plaintiff urges that the newspaper articles he cites prove that Meta's platforms "help connect and promote a vast network of accounts devoted to the commission of underage-sex content," and that "Meta acknowledged problems within its enforcement operations," to the media that it failed to disclose in the Proxy Statement. See Mot. at 9. Similarly, Plaintiff argues that Meta's internal Community Standards Enforcement Report

6

1    shows that Meta was aware of the proliferation of child sexual abuse material on its
2    platforms and did not disclose the same in the Proxy Statement. See id. at 11–12 ("From
3    March 2021 to September 2022, the amount of such horrific content exploded, increasing
4    from 5.0 million posts to 30.1 million posts, a six-fold increase in just eighteen months.").

5    But the newspaper articles and internal documents raised by Plaintiff do not
6    "directly contradict" the broad statements made by Meta. See Weston Fam. P'ship LLLP
7    v. Twitter, Inc., 29 F.4th 611, 619 (9th Cir. 2022) (holding that a false statement must
8    "directly contradict what the defendant knew at that time"). Meta does not suggest in its
9    policy statements that its tools to protect children on its platforms are entirely effective, or
10   that Meta is flawless in the execution of its policies. Instead, the Proxy Statement merely
11   outlines Meta's broad commitment to confronting child exploitation on its platforms. See,
12   e.g., Compl. at 2.

13   Even if the Court were to take Plaintiff's argument that Meta's enforcement efforts
14   are deficient on its face, this does not contradict Meta's aspirational statements to, for
15   example, "prevent child exploitation through a number of measures" or "constantly work[]
16   on new features, tools, and technologies to help protect young people online." Id. Nor
17   does Plaintiff present any evidence that Meta does not have "policies [that] prohibit
18   harmful content" or prohibit "content or behavior that exploits young people." Id. Indeed,
19   the statements challenged by Plaintiff evidence such policies. See, e.g., id. ("[W]e
20   disabled more than 500,000 accounts for violating our child sexual exploitation policies . .
21   ."); Mot. at 4 ("[W]e are . . . working with the National Center for Missing and Exploited
22   Children[] to help stop the spread of young people's intimate images online."). Thus, the
23   first category of statements raised by Plaintiff are largely incapable of being disproven—
24   and therefore not actionable—and in any event, Plaintiff fails in his attempt show that they
25   are false or misleading.

26   **b. Objective Statements**

27   In the list of allegedly false or misleading statements enumerated by Plaintiff, he
28   does identify several that may be actionable as securities violations because they are

7

objective or quantifiable. For example, Plaintiff challenges Meta's statement that "[i]n August 2023 alone, we disabled more than 500,000 accounts for violating our child exploitation policies . . . our teams disrupted 37 abusive networks and removed nearly 200,000 accounts associated with those networks." Compl. at 2. He also contests the assertion that Meta "automatically disable[s] accounts if they exhibit a certain number of the 60+ signals [it] monitor[s] for potentially suspicious behavior" and that "the prevalence of violating content on Facebook and Instagram remained relatively consistent with the previous quarter across a wide range of violation areas." Id. at 11.

But, as with the non-actionable statements, Plaintiff provides no particularized reasons why these statements are misleading or false. See 15 U.S.C. § 78u-4. Plaintiff argues that the newspaper articles and studies that he cites show that "Meta's policies did not in fact prohibit harmful content and exploitation of children." Compl. at 23. But the findings of the articles, while certainly alarming, do not "directly contradict" any statements made by Meta. See Weston Fam. P'ship LLLP, 29 F.4th at 619. Plaintiff does not allege, for example, that Meta did not disable more than 500,000 accounts for violating its child exploitation policies in 2023, or that Meta does not automatically disable accounts if they meet certain criteria for potentially suspicious behavior. Plaintiff presents no particular factual allegations suggesting that any of the statements in the Proxy Statement are untrue.

### c. Omissions

Rather than provide a particularized showing that Meta's statements are false, Plaintiff relies on the Proxy Statement's "fail[ure] to disclose the full extent of [Meta's child exploitation problem] and the failure of Meta's internal controls and enforcement mechanisms to curtail it." Mot. at 12. "To be actionable under the securities laws, an omission must be misleading . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1061 (9th Cir. 2014) (quoting Brody,

280 F.3d at 1006). Here, the information allegedly omitted by Meta in its Proxy Statement does not create such a skewed impression.

Meta acknowledges the severity of the threat of child exploitation on social media platforms generally. See Compl. at 10 ("Preventing child exploitation is one of the most important challenges facing our industry today. Online predators are determined criminals who use multiple apps and websites to target young people . . . That is why we are working hard to stay ahead."). And, as explained above, Meta does not represent that its efforts to curb threats to children are unwaveringly effective. Indeed, that Meta is reporting its efforts to confront child exploitation implicitly acknowledges the existence of that very issue on its platforms. Nor is Meta required to disclose every instance where it failed to eliminate child exploitation on its platforms. Rather, the Exchange Act "require[s] that officials divulge all known material facts so that shareholders can make informed choices." Desaigoudar, 223 F.3d at 1024. Meta does so by acknowledging the scope of the challenge and reporting its efforts to combat child predators.

Neither does the law require Meta to reproduce information that is available in the public domain in the Proxy Statement. See Rubke v. Capitol Bancorp Ltd, 551 F.3d 1156, 1163 (9th Cir. 2009) (following several other circuits in holding that "[i]t is pointless and costly to compel firms to reprint information already in the public domain"). As evidenced by the national newspaper articles cited by Plaintiff, that serious threats to children exist on Meta's platforms is well known to the public. A reasonable investor has sufficient information available to take this into account when voting on the shareholder proposals and Board elections. This fact, coupled with Meta's explicit and implicit acknowledgement of the issue, defeats the argument that Meta has "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists." Police Ret. Sys. of St. Louis, 759 F.3d at 106.

Plaintiff relies on two cases decided in this District and the Central District of California to argue that "concrete, material facts that were omitted from the Proxy." Mot. at 12. But the level of alleged omission in those cases was much more significant than any

alleged deficiencies here.  In In re Wells Fargo & Company Shareholder Derivative Litigation, the plaintiffs alleged that Wells Fargo concealed a wide-ranging scheme involving fraudulent account creation.  282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017).  By contrast, Meta acknowledges the issue of child exploitation and its efforts to fight it.  Likewise, the plaintiffs in In re Countrywide Finance Corporate Derivative Litigation alleged that the defendant omitted from its proxy that it was making "fundamental changes to the Company's business model that relied on riskier products . . . in order to inflate its stock price and drive its short-term performance."  554 F. Supp. 2d 1044, 1075 (C.D. Cal. 2008).  Here, Meta makes no comparable omission.  Thus, Plaintiff fails to establish that Meta's Proxy Statement is misleading by omission.

### 2. Loss Causation

An independent reason that Plaintiff is unlikely to succeed on the merits is that he identifies no basis for inferring a causal link between the alleged misleading statements and an economic harm.  Loss causation requires a showing that the defendant "caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b).  This requires that a plaintiff prove both economic loss and proximate causation.  See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005); New York City Employees' Ret. Sys., 593 F.3d at 1023.  Section 14(a) plaintiffs must "connect[] the proxy misstatements with an actual economic harm," and "provide notice of what the relevant economic loss might be."  New York City Employees' Ret. Sys., 593 F.3d at 1023–24.

Here, Plaintiff alleges no such actual economic harm, let alone any connection between the alleged misstatements and such economic harm.  See id.  Plaintiff merely suggests that Meta's failure to address child exploitation "pos[es] a material risk to Meta" and may cause the company "financial harm."  Mot. at 13–14.  But Plaintiff's warnings of financial risk to Meta are conclusory and no more particular than warning of a high risk of governmental and regulatory responses and fines.  Cf. City of Birmingham Relief & Ret. Sys. v. Hastings, No. 18-CV-02107-BLF, 2019 WL 3815722, at *15 (N.D. Cal. Feb. 13, 2019) (rejecting plaintiff's argument that "potential liability for a tax investigation"

constitutes loss causation because "such injuries are entirely speculative"). Plaintiff does raise that Meta was recently fined for violations of privacy compliance and failing to safeguard children's information on Instagram. See Mot. at 14. However, Plaintiff fails to identify any actual risk of future government enforcement actions against Meta beyond abstract speculation. See id. at 14–15.

Plaintiff also fails to connect the purportedly uninformed votes on the shareholder proposals or Board re-election with the alleged "material risk" or "financial harm" to Meta. Id. at 13–14. The shareholder proposals at issue here are not binding on Meta, and, if successful, they would only recommend that Meta generate reports and commission further studies. See Opp'n at 2. And even if the Board produced the reports and studies recommended by the shareholder proposals, there is no guarantee that the financial harm and fines that Plaintiff warns of would be averted. Nor was there an alternate slate of directors proposed against the incumbent Board whose election may have depended on the disclosure of additional information. Id. at 3. Thus, Plaintiff fails to (1) allege an actual economic harm, and (2) "connect[] the proxy misstatements with an actual economic harm." New York City Employees' Ret. Sys., 593 F.3d at 1023.

### B. Irreparable Harm

To succeed on a motion for preliminary injunction, a plaintiff must show that "irreparable injury is likely in the absence of an injunction." Winter, 555 U.S. 7 at 22. "A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." Id. Plaintiff fails to carry this burden here.

Plaintiff argues that "an uninformed shareholder vote is often considered an irreparable harm." Mot. at 14. He is mistaken. Federal courts in the wake of the Supreme Court's decision in eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 394 (2006), have rejected the contention that denying shareholders the right to cast an informed vote constitutes a per se irreparable harm. See, e.g., Masters v. Avanir Pharms., Inc., 996 F. Supp. 2d 872, 885 (C.D. Cal. 2014); Deborah G. Mallow IRA SEP Inv. Plan v. McClendon, No. CIV–12–436–M, 2012 WL 2036748, at *3 (W.D. Okla. June 6, 2012).

However, even if an uninformed shareholder vote did constitute irreparable harm per se, that would make no difference here because Meta's shareholders were not uninformed. As explained above, Plaintiff does not successfully allege any false or misleading statements or omissions in the Proxy Statement. And media reporting on Meta's issues with child exploitation on its platforms is widely available to the public. Indeed, Plaintiff spends no less than 18 pages in his Complaint rehashing information reproduced from national newspapers. See Compl. at 23–40. It is clear that Plaintiff and all other interested shareholders had sufficient information available to make an informed vote on the proposals.

Nor would any injury sustained by Plaintiff be irreparable. This case involves two advisory shareholder proposals, one that recommends that Meta produce reports and commission studies on child exploitation on its platforms, and one that recommends a vote to re-elect the current Board. See Opp'n at 2. If Plaintiff later succeeds on the merits—however unlikely that may be—Meta could void the votes at issue and call another shareholder vote with amended disclosures.[2] Thus, even if there was a potential harm to Plaintiff, it is easily remedied. See Silberstein v. Aetna Inc., 2014 WL 1388790, at *4 (S.D.N.Y. Apr. 9, 2014) ("[C]ourts have denied preliminary relief upon finding that a prior vote could be voided after it occurs, instead requiring the voting item to be resubmitted to shareholders along with corrected disclosures."). The lack of irreparable injury alone defeats Plaintiff's motion.

**C. Balance of the Equities**

On a motion for preliminary injunction, the Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding

---

[2] Plaintiff's requested relief is therefore unlike "attempting to enjoin a merger or other corporate activity, which would require the Court to 'unscramble the eggs' if preliminary injunctive relief were withheld." Stein v. 1-800-Flowers.com, Inc., No. 16CV6252RRMRLM, 2016 WL 8230128, at *5 (E.D.N.Y. Dec. 2, 2016).

12

of the requested relief." Winter, 555 U.S. at 24 (internal quotation marks and citation omitted).[3]  The balance of the equities tips decisively in Defendants' favor, not Plaintiff's.

First, there would have been significant disruption to Meta if the Court had delayed its annual shareholder meeting. When Plaintiff filed his motion, Meta had already expended significant resources with the expectation that the meeting would go forward as planned. See Opp'n at 13. Enjoining and rescheduling the meeting would have imposed a substantial burden on Meta. By contrast, Plaintiff suffered no obvious harm by the meeting and votes going forward as planned: Plaintiff was not a sponsor of either of the shareholder proposals and had not advanced an alternate slate of directors. See id. Second, injunctive relief "must be tailored to remedy the specific harm alleged." Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991). Plaintiff's unexplained request to enjoin the entire meeting when only three shareholder votes are at issue was overbroad by any standard. Thus, the third Winter factor weighs in Defendants' favor.

### D. Public Interest

For the reasons explained above, a preliminary injunction is not in the public interest here. Plaintiff is not likely to succeed on the merits. See D & N Fin. Corp. v. RCM Partners Ltd. P'ship, 735 F. Supp. 1242, 1253 (D. Del. 1990) ("Because the Court has found that the plaintiff has no reasonable probability of success on its claim under the statute, the Court concludes that the issuance of an injunction would not be in the public interest."). And Plaintiff's assertion that an injunction is in the public interest because "federal securities laws are designed to promote full disclosure of all material facts to stockholders," see Mot. at 15, is misplaced because there is no evidence that Meta has omitted material facts or made material misrepresentations. See 17 C.F.R. § 240.14a-9. It is not in the public interest to compel Meta to reproduce information that is already in the

---

[3] The shareholder meeting that Plaintiff seeks to enjoin has already occurred at the time of this order. The Court did not hear argument prior to the May 29, 2024 meeting because the shortcomings of Plaintiff's motion were apparent from the papers. However, so to fully explain its reasoning, the Court will discuss the balance of the equities of postponing the meeting.

public domain, and it is certainly not in the public interest to enjoin Meta's annual shareholder meeting while it produces that duplicative information to shareholders.

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for preliminary injunction.

**IT IS SO ORDERED**.

Dated: June 28, 2024

_____
CHARLES R. BREYER
United States District Judge