IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT EISNER,<br><br>  Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC., et al.,<br><br>  Defendants. | Case No. 24-cv-02175-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |

Plaintiff Matt Eisner sued Meta Platforms, Inc. and Mark Zuckerberg under Section 14(a) of the Securities Exchange Act of 1934 based on allegedly misleading statements Meta made in its 2024 Proxy Statement. In June 2024 the Court denied Eisner's motion for a preliminary injunction, finding that he had failed to show a likelihood of success on the merits for two reasons. First, the statements that Eisner had identified as misleading do not rise to the level of material misrepresentations under the securities laws. Second, Eisner had failed to establish economic loss. PI Order (dkt. 49). Eisner filed an Amended Complaint soon after. Am. Compl. (dkt. 50). Defendants move to dismiss, asserting that the Amended Complaint does not remedy the legal defects the Court already addressed. MTD (dkt. 56).[1] The Court agrees and **GRANTS** Defendants' motion to dismiss.

Section 14(a) private plaintiffs like Eisner must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an

---

[1] Defendants also argue that Section 14(a) does not authorize shareholders to sue over alleged misrepresentations in a nonbinding shareholder proposal. This "statutory standing" argument does not implicate the Court's jurisdiction, see Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014), so the Court assumes without deciding that Eisner's suit is properly brought under Section 14(a).

allegation regarding the statement or omission is made on information and belief, … all facts on which that belief is formed." PI Order at 5 (citing 15 U.S.C. § 78u-4). A securities plaintiff also bears "the burden of proving that the act or omission of the defendant caused the loss for which the plaintiff seeks to recover damages," which requires that they "connect[] the proxy misstatements with an actual economic harm." Id. (first quoting 15 U.S.C. § 78u-4 (cleaned up), and then quoting N.Y. City Emps.' Ret. Sys. v. Jobs (NYCERS), 593 F.3d 1018, 1023 (9th Cir. 2010), overruled on other grounds by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012)).

Rather than repeating the analysis from Court's prior order, which is available at 2024 WL 3228089, the Court addresses only the new allegations in the Amended Complaint and Eisner's new arguments in support of his claims. Thus, the Court does not revisit its conclusion that many of Meta's proxy statements are "broad policy affirmations or aspirational statements" that are not actionable under the Exchange Act. PI Order at 5–6. These statements include, for example:

- "We seek to prevent child exploitation through a number of measures, including using sophisticated technology, to proactively fund and take action on such content." Am. Compl. ¶¶ 45, 56, 65.
- "[W]e are working hard to stay ahead." Id. ¶ 45.
- Meta's "Company[] Principles," which include "Keep People Safe and Protect Privacy." Id. ¶ 51.
- Meta's "Community Standards," which state "We are committed to both giving people a voice and keeping people safe on our platform." Id. ¶ 52.
- "We are constantly working on new features, tools, and technologies to help protect young people online." Id. ¶¶ 56, 65

Eisner alleges no new facts to contest the Court's conclusion that these statements are not actionable; his conclusory statement that "Meta's statements in the Proxy are not vague statements of optimism or aspirational statements," id. ¶ 5, is not a factual allegation sufficient to survive a motion to dismiss.

2

Eisner's new allegations in his Amended Complaint fall in two buckets. First, Eisner alleges that many of Meta's objectively verifiable (i.e., non-aspirational) statements are misleading "half-truths."[2] In particular, Eisner claims that statements about Meta's efforts to protect children are misleading because they omit the fact that Meta executives refused to implement more effective tools, Am. Compl. ¶¶ 59–62, 74, and that statements about Meta's successes in combatting sexually explicit content and sexual exploitation of minors are misleading because they omit the fact that Meta continued to have serious problems on these fronts, id. ¶¶ 58, 74. Second, Eisner alleges that his voting rights as a shareholder have been negatively affected by Meta's allegedly misleading statements and that he has suffered economic loss by virtue of bringing this action. Id. ¶¶ 153–60. These new allegations do not move the needle enough to state a claim, however.

**Half-truths.** Eisner's new allegations fail because Eisner overstates what the securities laws require. Omissions are actionable if they "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1061 (9th Cir. 2014) (citation omitted). For instance, a company's failure to disclose that it wholly "abandoned its underwriting standards, thus exposing itself to an undisclosed level of heightened risk," constituted an actionable omission. In re Countrywide Fin. Corp. Derivative Litig., 554 F. Supp. 2d 1044, 1076–77 (C.D. Cal. 2008). As did a company's failure to disclose "a fraudulent business practice that put the company at material risk." In re Wells Fargo & Co. Shareholder Derivative Litig., 282 F. Supp. 3d 1074, 1103 (N.D. Cal. 2017). But the Exchange Act does not "obligate corporate officials to present … every conceivable argument against their own recommendations." Desaigoudar v. Meyercord, 223 F.3d 1020, 1024 (9th Cir. 2000). It requires only "that officials divulge all known material facts so that shareholders can make informed choices." Id.

---

[2] Eisner does not appear to contend that any of Meta's statements were actually false—that is, that they "directly contradict what the defendant knew at that time." Weston Fam. P'ship LLLP v. Twitter, Inc., 29 F.4th 611, 619 (9th Cir. 2022).

1    Eisner argues that Meta violated the securities laws by failing to describe in detail
2    (1) all the child protection strategies it declined to adopt and (2) the severity of the issue of
3    sexually explicit content and sexual exploitation of minors on Meta platforms.  In essence,
4    Eisner would have had Meta argue against its own recommendations, tout the benefits of
5    tools it ultimately rejected, highlight its own failures, and devalue its own successes.  That
6    is not necessary.  See id.; see also In re Real Est. Assocs. Ltd. P'Ship Litig., 223 F. Supp.
7    2d 1109, 1120 (C.D. Cal. 2002) ("The securities laws do not require that a proxy
8    solicitation discuss all of the arguments against, or all of the alternatives to, the proposed
9    course of action."); Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002)
10   ("No matter how detailed and accurate disclosure statements are, there are likely to be
11   additional details that could have been disclosed but were not.").

12   Eisner's allegations also fall flat considering that much of the information he argues
13   Meta should have disclosed was available to the public at the time Meta filed the Proxy.
14   For starters, Meta itself "acknowledge[d] the severity of the threat of child exploitation on
15   social media platforms generally" and did not "suggest … that its tools to protect children
16   on its platforms are entirely effective, or that Meta is flawless in the execution of its
17   policies."  PI Order at 7, 9.  Furthermore, many of Eisner's concerns were already reflected
18   in the public domain.  See id. at 9 ("As evidenced by the national newspaper articles cited
19   by Plaintiff, that serious threats to children exist on Meta's platforms is well known to the
20   public.").[3]  Meta had no obligation under the securities laws to reproduce this information.
21   See Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1163 (9th Cir. 2009).

22   **Economic loss.**  Eisner's new allegations in his Amended Complaint do not fix the
23   loss-causation problem that the Court already identified: he does not allege economic loss.

---

[3] While this information predates the 2024 Proxy Statement, it does postdate other, similar statements made by Meta.  Whether those earlier statements are misleading is at issue in a case before Judge Martínez-Olguín.  See Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc., Case No. 21-cv-8812-AMO, 2024 WL 4353049, at *1, 13 (N.D. Cal. Sept. 30, 2024) (denying in part Meta's motion to dismiss).  The different context and timeline distinguish that case, as Judge Martínez-Olguín had no occasion to address whether information that became publicly available after Meta's earlier statements affects the sufficiency of the Proxy at issue in this case, which of course came even later in time.

4

The Amended Complaint includes new, fleshed-out allegations about the potential risks of economic harm to Meta. E.g., Am. Compl. ¶ 156 ("E.U. regulators could ultimately fine Meta up to 6 percent of its global revenue, which was $135 billion last year, as well as force other product changes."). But these new allegations, like those in Eisner's original Complaint, are too speculative. See PI Order at 10–11. Even more, some of the alleged risks are not even traceable to the 2024 Proxy Statement. E.g., Am. Compl. ¶ 157 ("In October [2023, about six months before Meta filed the 2024 Proxy Statement], three dozen states in the United States sued Meta for using 'psychologically manipulative product features' to lure children, in violation of consumer protection laws."). These new allegations are simply not enough to establish that Eisner has suffered an economic loss as a result of Meta's false or misleading statements in the 2024 Proxy.

Eisner next attempts to skirt the economic-loss hurdle altogether, arguing that he need not allege economic loss because he seeks only injunctive relief. Opp. (dkt. 61) at 12–13. But that is not the law:

> Ninth Circuit law, and the law from other circuits, make clear that loss causation is required to maintain an action under § 14(a) regardless of the relief sought. In NYCERS, the Ninth Circuit addressed the application of the loss causation requirement of the PSLRA to § 14(a) claims. The court ruled that when bringing a direct claim under § 14(a) of the Exchange Act, "private plaintiffs have to allege loss causation." The court further stated that in "well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm."

Hubner v. Mayer, CV-15-2965-MWF, 2015 WL 12513581, at *5 (C.D. Cal. June 8, 2015) (emphasis added) (cleaned up) (quoting NYCERS, 593 F.3d at 1023). Indeed, NYCERS expressly states that "without an allegation of economic loss, no remedy, equitable or otherwise, is available." 593 F.3d at 1024 (emphasis added). Eisner responds by citing Calamore v. Juniper Networks Inc., 364 F. App'x 370 (9th Cir. 2010), an injunctive-relief case in which the Ninth Circuit did not interrogate whether the plaintiff had alleged loss causation. But it would read far too much into that unpublished opinion to think that it did away with the economic-loss requirement for equitable claims after NYCERS made that

5

1    requirement clear.  See Hubner, 2015 WL 12513581, at *6 (rejecting this argument).

2        Eisner also contends that two new allegations suffice to establish loss causation.
3    But one of those allegations—that his "voting rights have been interfered with," Am.
4    Compl. ¶ 153—does not suffice to show economic loss.  See NYCERS, 593 F.3d at 1021,
5    1023.  The other—that "he has incurred attorneys' fees and expenses to bring the present
6    suit," Am. Compl. ¶ 153—is entirely circular.  A plaintiff does not satisfy the economic
7    loss requirement merely by paying a lawyer to bring suit under the securities laws.[4]

8        For the foregoing reasons and the reasons stated in the Court's prior order, the case
9    is **DISMISSED WITH PREJUDICE**.  Eisner has "already been given two bites at the
10   apple"; he amended his Complaint following the Court's prior order, which identified
11   many of the deficiencies at issue here.  Wochos v. Tesla, Inc., No. 17-cv-5828-CRB, 2019
12   WL 1332395, at *7 (N.D. Cal. Mar. 15, 2019).  His failure to remedy those deficiencies
13   suggests that he has already "made his best case" and that leave to amend would be futile.
14   Espy v. J2 Glob., Inc., 99 F.4th 527, 542 (9th Cir. 2024) (citation omitted).

15       **IT IS SO ORDERED.**

16       Dated: October 22, 2024         

17                                       CHARLES R. BREYER
                                         United States District Judge

---

[4] Eisner cites two RICO cases, Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086–87 (9th Cir. 2002), and Burger v. Kuimelis, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004), as support for his claim that attorneys' fees constitute economic loss.  But those cases merely hold that prior legal expenses can give rise to a suit.  Eisner does not allege, for instance, that the 2024 Proxy Statement caused him to incur separate legal expenses as to his own liability that he now seeks to recoup in this suit.